Good morning, Your Honors. My name is David Cunningham. I represent the plaintiff in this case, Joseph King, the administrator of the estate of Gertrude  Gertrude King died in an accident a little over five years ago, just a few miles from where we sit today, while a pedestrian on Massachusetts Avenue in Cambridge. As a fire truck responding to an emergency was in the process of taking a left hand turn. In that instance, the fire hose had inadvertently deployed from the truck and was being dangled as the truck proceeded down the road. Ultimately, the fire hose and or nozzle struck Gertrude King. She died a couple of days later from the injury. We're here today after the allowance of a motion for summary judgment in the district court over two issues. One, there was no expert on behalf of the plaintiff. And two, a finding that it would be unforeseeable for this kind of incident to occur. The position that we take, Your Honor, is the case itself is not complicated enough to require an expert. And we point to the appendix, there's a photograph of what we're talking about on page 17 of the appendix and page 186 of the appendix. Counsel, here's the problem I have with your argument on that point. A product's liability or defective design or implied warranty case under Massachusetts law, as I understand it, requires you to prove in effect that a reasonably prudent manufacturer would not have sold the product with this design. Okay? Accepting your premise that the foreseeability, that safety concerns may require the netting for the fire hoses, how can we figure out without expert testimony whose duty that is to supply those? This isn't the case where the manufacturer is providing a turnkey sort of product, all right? The buyer here picks and chooses, and once the buyer chooses to supply the hoses itself, how can we tell that a reasonably prudent manufacturer would have insisted in that circumstance on providing the hose restraints rather than assuming that whoever provides the hoses is going to provide hose restraints and not even assumes that it is foreseeable and that they're necessary? Don't you need an expert to sort out how far the manufacturer's duty extends? Well, Your Honor, we would say no. Why not? So I have a house which burns down because it doesn't have a carbon monoxide detector in it. Right? Can I sue the general contractor without any proof that the contractors usually supply carbon monoxide detectors even when the homeowner doesn't specify it and even though many homeowners simply install and provide their own detectors? Well, under the scenario that you're presenting, Your Honor, you're taking a consumer. Right. And holding a consumer to a standard that a manufacturer would. So that under the circumstances, my house burns down, doesn't have a carbon monoxide detector in it. I can sue the contractor, right? And I don't have to present any expert testimony that a reasonable contractor doing business in this community at this time would have to prevent a safety risk, would have installed carbon monoxide detectors. Well, the answer to your question, at least from my perspective, would be if you think you can prove your case going forward like that, yes, you should be able to. Yeah, but that begs the question. How can a jury tell what a reasonable manufacturer would or would not be expected to do? This would be an easy case if the safety device was something that even a layperson could tell it had to be done at the time of manufacture or else it couldn't be there, all right? But we're dealing now with a safety device that obviously can be provided either by the manufacturer or by the purchaser or by whoever supplies the hoses. Well, Your Honor, if we use that same set of logic, then we wouldn't hold General Motors or Ford or Toyota responsible for products that they manufacture. Yet, in this particular instance... Yeah, but we wouldn't hold them liable for defective design in their products unless those designs either violated some regulation, statute, standard, none of which apply here, or unless the plaintiff had expert testimony that a reasonable manufacturer wouldn't make a car like this. And that's, I think, what we're asking the court to do in this case. It's to strike the balance between the requirement of having an expert in almost every case versus the requirement or the ability to prove your case to a jury that's called upon to make a common sense decision. Just on this, does it matter in your case that the manufacturer gave as an option netting? Actually, in some respects I guess it does because... Because what? We're sitting back all these years later looking at a scenario in which, in this instance, the city of Cambridge created a set of specifications. Would it be reasonable for a manufacturer of a product to accept from its customer what the specifications are? For instance, if the customer said, we want a fire truck with three wheels, well, let's face it, no one would accept that. The manufacturer would never be in a position where they would manufacture that, they'd say, no, we're not going to do it. It's not safe to do it, and we shouldn't be required to do it. In this instance, we're actually trying, in some instances, to turn the responsibility onto the customer, whether it's the city of Cambridge or whether it's a volunteer fire department, to say, you have to figure out how to design your truck safely, and it's your responsibility. Yet, we're talking about a $270,000 piece of machinery that could have been produced more safely by attaching what, in effect, is nylon netting to keep something from falling off the road as you're driving down the road. This doesn't require somebody to have an expert come and tell them that it doesn't make sense to allow trucks to go driving down the road, going around corners, and have nothing to stop the hose from coming out and killing someone. Well, I have another question. This is not the only manufacturer of fire trucks in the country, and if you had an expert who came in and said the Arons Fox or whoever manufactures fire trucks, they put this on all the time. That would give a jury something to go on. What you're suggesting is that in these largely community-designed trucks, they're all sort of one-offs. Every community has different needs depending on the heights of the buildings, the narrowness of the streets, and so on and so forth, that somehow a lay jury would be able to figure out without some expert testifying as to what is necessary in every case on fire hoses, which is the case here, fire hoses. But the only expert here was the company's expert who said that this came off because it was improperly stowed. That might have happened even with NETIC. Even after the change was made, did it become an industry standard? The industry standard changed three years after the manufacture of this fire truck. Yes, but it wasn't an industry standard which said that all fire trucks had to be retrofitted. That is correct, Your Honor. It was a prospective change in the industry standard. Our position in this case is whether the industry changes standards or not, we should hold the industry responsible for making safe trucks that are traveling on roads all over the country. When the easiest solution to the problem is in the hands of the manufacturer, don't put it on the road when you could see that the hose could fall off the truck and the easy solution to it is a very simple solution. Thank you, Your Honor. May it please the Court, I'm Tony Colicci. I represent Pierce Manufacturing, and as the Court is aware, we're seeking an affirmation of the judgment below. Essentially, Pierce's argument is, as outlined in our papers, expert testimony was required for the plaintiff to prove his implied warranty and design and negligent design claims. Competent expert testimony was required. Competent expert testimony was needed to establish that the Sabre custom pumper, the word custom is right in its name, had a defect at the time that it was manufactured in 2002 and sold to the Cambridge Fire Department, and that that defect caused the tragic injuries to Ms. King. As the Court is aware, procedural history here includes an order back in February of last year where the District Court Judge Richard Stearns determined that the plaintiff had failed to disclose an expert by the deadline imposed by the Court and precluded that testimony at the time of trial, and on the day after we obtained that order, we began preparing our motion for summary judgment. This is a complicated piece of machinery, and I guess the best way for us to look at it is this. While folks who hear a large vehicle painted red with a siren going down the street understand that that fire truck, that emergency vehicle, is going to fight a fire, they have no common knowledge about the type of equipment that's on that vehicle, what that equipment's purpose is, how it's stored and restrained, or for that matter, the forces that it's subject to when that vehicle responds to an emergency call. Why did they offer netting? They offered netting because they offer literally thousands of accessories. But there's not everything, so why netting? They offered netting because there were instances where fire departments had requested it in the past, and so they made it a part of their catalog. That information's not in the record, Your Honor. There's no information about why they offered netting. But the netting, it is in the record that the purpose of the netting is to keep the hose from falling out of the truck. To keep hose from falling out of the truck. There's no information suggesting that the purpose of the netting is to do that in a cross-lay hose bed, which is different than a typical hose bed. And indeed, the... And that's significant. I'm just trying to figure out what the expert's important for. So that's significant, the distinction you just drew, because... Yes, the expert examined two things. He examined the design in the context of the implied warranty claim, and he examined the negligence of the manufacturer... But what he established, as I understand the expert's testimony,  but it was because it was mislaid. Correct. Okay, but the question about the netting is a follow-on question, which is, if it's foreseeable that a hose may be mislaid, then your expert suggests the hose will come out, which raises for me the question, why don't they then put on netting? The... The question is not... The expert never concluded that it was foreseeable that hose could come out. No, no, I know, but he just... The reason it came out was because it was mislaid. It was mislaid. Right, so I'm saying, if you thought an ordinary person could grasp the idea that sometimes people make mistakes, so a hose might get mislaid, that doesn't seem super complicated to me. That would just raise the question, well, if your expert is saying that can happen, why does the manufacturer not think, since that can happen, we need to put netting? Fair question. Our expert concluded after the fact that the hose was mislaid and that's what caused it to come out because of the centripetal forces that were present at the time of the accident. Back in 2002, there was no accident history. There was no information of that type. That just raises... It's back to my question. That's what just puzzles me, that you're offering netting. If a hose is never going to come out, why is there an offer to make netting that will stop hoses from coming out? That just to me suggests it was at least foreseeable to somebody that a hose might come out. That's a different question than maybe whose duty it is to put the netting there. I get that, but just as to foreseeability, doesn't the fact that you're offering netting indicate that somebody had the idea a hose might pop out? I suppose that that could be inferred from the record, Your Honor, but whether or not it was foreseeable that an injury would occur or that the netting would follow on a cross-lay hose bed, which has a different purpose than a general hose bed that's at the back of a fire truck, those are questions that are not answered on the record. Do you offer netting for both? The record only re-discloses that we offer netting. No indication on the record as to what the netting is? No indication on the record that it's offered for cross-lay hose beds back in 2002. I guess that would be... Because of the absence of a... as long as I'm on the issue of foreseeability, because of the absence of any accident history or record of any injuries occurring as a result of an incident similar to this, it was incumbent upon the plaintiff to conform with an expert who said a reasonable engineer would have foreseen this and would have fitted the truck with a netting because it was foreseeable that this could occur. But foreseeability isn't a question that usually requires expert testimony. That's correct, Your Honor. It's just a question of what a reasonable person would have expected, and it does seem to be a rather common-sense proposition. That a hose that's furrowed on a fast-moving truck is likely... not is likely, but that it's possible that it will come out. It doesn't seem counterintuitive. Your Honor, you're right. Anything is possible. But the test for foreseeability as of 2002 involved a manufacturer that was in business for over 90 years, and the record also discloses the testimony of the firefighters from Cambridge who, over the course of three decades, responded to thousands of fire calls. No one had ever heard of this happening before. The manufacturer never did, the industry never did, and the firefighters in Cambridge never did. Well, but someone must have heard of it because in 2005, when the industry standard was adopted, the record reveals that the discussions leading up to the adoption of the industry standard referred to the fact that there had been many incidents of hoses unfurling, and that was the reason for the adoption. Now, it doesn't say that those... how far back those occurred, but we know they occurred sometime prior to 2005. So this wasn't a totally unheard-of or freak phenomenon. And I get back to my question. Foreseeability is a question that I think is almost uniquely for a jury. Typically, foreseeability is a question for the jury, Your Honor. That is correct. However, as of 2005, the precipitating incident was the Coriopolis accident. Oh, I know that. Which did not include, which did not involve a truck that was manufactured or sold by... What would be the need for an expert, assuming, and I know you're contesting this, but assuming we thought it's a jury question as to whether it was foreseeable. Okay, so the possibility of a hose coming out, we say a jury could decide under its own common sense whether that's foreseeable or not in this situation. We take that, and we also take the fact that the record does show that netting was an available, cheap solution, right, offered by the manufacturer. We've got those two facts. What is the necessity of the expert in your view? If I can divide my answer into two parts, the first dealing with the implied warranty claim, it becomes the question of the forces that were present, the type of equipment that's on the truck, what its purpose is, the likelihood that a firefighter would use the netting. All of those things would be expert of nature. They were not common knowledge for lay jurors. They don't understand what a cross-lay hose bed does, what its purpose is, how it's connected to the truck, and the forces that are applied to it as the truck responds. On the consequence... Is that a suggestion that you mean the netting might fail? The netting may not even be used. The purpose for a cross-lay hose bed is to immediately stop the vehicle and fight a fire without doing anything else, and there's testimony in the record from Roger LaCour, if you remember that testimony, that suggests that where... Why would that be relevant to whether there's a design defect, whether they'd use the netting? That goes to... If there is a requirement to impose netting, you just would decide it. Then in a particular case, you might say, well, the manufacturer's not liable because they took the netting off. So what's the relevance of that for purposes of the question that we've got as to whether there's a design defect? Well, going back... That specific fact, there is... It's not relevant to that inquiry. However, if we're examining the design of the product, it would be those factors. If we're examining the conduct of the manufacturer, the negligent design theory, it goes back to the question I believe you asked my colleague, and that is, what significance is it that there was an offer for the netting, and it was the Cambridge Fire Department which chose not to use that type of cover but to use an alternative cover? And is that... Is that in the record that they use an alternative one? Yes, it is. The cover itself is a steel plate that went over top each of the cross-layer hose beds. It's mentioned in the expert affidavit, I believe, and I know it's mentioned in the expert report that accompanied the affidavit. And it's also ordered, by the way, by the Cambridge Fire Department in the 80-some pages of specifications that they provided. If I understand it, all these trucks are one-offs in reality. Each department, when it orders a specific truck for a specific purpose, has a basic chassis, and they hang onto that basic chassis the things which they believe are needed for their use of that truck. Is that not basically how it gets put together? That's exactly right, Your Honor. And so there were different ways, different approaches to how you hang hose, how you secure a hose that an end buyer could choose. And there was a choice made here. And among the choices would have been a steel plate, as you point out, or a net. And isn't it... I guess it's a really question I would have for the plaintiff, but wouldn't it... I don't see how the average layperson... I don't see how I could decide whether that was manufactured incorrectly because they didn't choose a net as opposed to a steel plate or some other way of hanging the hose. Am I missing something? I don't think so. On that score, since I'm the only thing standing between the court and lunch, I could pause and say we would ask the panel to affirm the judgment below. And if there's any other questions, I'm concluded. Thank you. Thank you.